HARRIS, Presiding Judge.
Appellant was convicted of manslaughter in the first degree and the jury fixed his punishment at five years imprisonment in the penitentiary. Appellant was represented by counsel of his choice and at arraignment pleaded not guilty. After sentence was imposed he gave notice of appeal and trial counsel represents him on this appeal.
Omitting the formal parts, the indictment reads as follows:
“The Grand Jury of said County charge that before the finding of this indictment Gerald Alvin Pride, whose name is to the Grand Jury otherwise unknown, than as stated, unlawfully and intentionally but without malice, killed William Gene Jackson, by driving a motor vehicle in, upon, over or against the automobile in which William Gene Jackson was riding, against the peace and dignity of the State of Alabama.”
There was no motion to exclude the State’s evidence; there was no request for the affirmative charge, and no exceptions were reserved to the oral charge of the court. There was a motion for a new trial in which the sufficiency of the evidence was questioned as well as some adverse rulings during the trial.
It is not disputed that the automobile-truck collision occurred before daybreak on May 12, 1978, on a well travelled highway in Lauderdale County, Alabama. It is not disputed that appellant was the driver of a 1971 pickup truck that was involved in a head-on collision with a Ford automobile driven by the deceased, William Gene Jackson, at the time and place of the accident. It is not disputed that appellant was driving his truck on the wrong side of the highway at the time he ran into the Ford automobile knocking it off the highway and down a steep embankment. It is not disputed that the deceased died a few minutes after the accident and as the proximate result and consequences of the injuries he received in the truck-automobile collision.
There is a sharp conflict in the evidence as to whether appellant was under the influence of intoxicating beverages at the *1217 time of the head-on collision. Some of the witnesses presented by the State testified that appellant was highly intoxicated or drunk immediately after the accident. Witnesses produced by appellant testified that he was not intoxicated at the time of the accident and that they did not smell the odor of alcohol on appellant’s breath immediately after the accident.
It is not disputed that Lauderdale County was a dry county at the time of the fatal accident. It is not disputed that, on the afternoon preceding the accident, beer was served to the participants in a golf tournament during a fish fry which followed the tournament. The evidence is conflicting as to whether there was a keg or kegs of draft beer at the fish fry. One of the sponsors testified there were twenty cases of beer at the fish fry, while other witnesses were just as positive there was draft beer served during and after the fish fry.
Appellant admitted that he consumed six cans of beer during the afternoon and night prior to the accident the next morning around 4:20 a. m. After the fish fry a number of men, including appellant, went to the Lakeview Motel and played “tonk” for several hours. After 11:30 or 12 o’clock everyone left the motel except four men. They were appellant, James Paul Risner, Jack Morris and Bennett Wilson. Soon thereafter Risner and Morris went to bed and slept. Appellant and Wilson continued to play cards. There was some testimony that appellant left the room and returned with four cans of beer. Appellant denied this and steadfastly maintained that no beer was consumed in the motel room that night, except one can that he brought with him to the room.
According to the testimony Wilson woke Morris at 4:00 a. m. and requested that he drive him home. Wilson’s car was parked at the motel restaurant at the time but Morris took him home in Morris’ car. Appellant left about the same time in his truck. Twenty minutes later the accident occurred.
Anthony W. Terry, a former law enforcement officer with about ten years experience, was the first person to arrive at the accident scene. He discovered appellant sitting under the steering wheel of his truck. The hood to the truck had been knocked off by the impact and the door to the driver’s side had been smashed in. Terry opened the door on the passenger side and asked appellant if he was hurt and appellant said he did not think so. Terry asked him what happened and appellant replied, “Some S.O.B. hit him and kept going.” Terry had put appellant out of his truck and put him on the passenger side of his own truck. Terry noticed the grass on the shoulder of the road was mashed down and he went down the embankment and found the Ford automobile which was then occupied by the driver. He managed to feel the pulse on the occupant’s neck and knew he was alive. He went back to the highway to try to stop motorists to contact the police and get an ambulance. He finally stopped three boys in a pickup truck and they agreed to contact the police department and request an ambulance. Terry remained until the ambulance arrived and helped put the injured in the ambulance, Terry stated that appellant was highly intoxicated and asked him for a cigarette “because the officers might think he was drinking.” Terry did not find any intoxicating beverages at the scene of the accident.
Photographs of the scene of the accident and the wrecked vehicles were introduced into evidence without objection.
Roger Olive, a State Trooper, arrived at the scene as the ambulance was leaving to carry the injured persons to the hospital. He observed the pickup truck on the highway and the Ford automobile down in a ravine. The time was about 5:30 a. m., and he left the scene at about 7:00 a. m. He had investigated many automobile accidents during his tenure as a State Trooper and expressed the opinion that the truck was on the wrong side of the highway at the time of the collision. He went to the hospital between 8:00 and 8:30 that morning and saw appellant in the hallway just outside the x-ray room. Over objection he was asked if he got close enough to appellant to *1218 determine if he had been drinking and he stated, “My opinion was that he had been drinking.” Appellant moved to exclude the answer on the ground that the proper predicate had not been laid in that there was a time lag of several hours between the time of the accident and the time Trooper Olive saw appellant at the hospital. The objection was overruled. Appellant contends the trial court erred in overruling his motion to exclude. We do not agree.
In Montgomery v. State, 44 Ala.App. 129, 203 So.2d 695, the court stated:
“On the other hand, it is permissible to show by a late arriving witness that the defendant was drunk in his presence, provided the State also shows that the surrounding circumstances are such as to preclude the possibility of appellant drinking after the accident.”
In the instant case the State did not attempt to show that appellant was drunk by the testimony of Trooper Olive but only that he had been drinking. The testimony of witness Terry clearly shows that there was no alcoholic beverage of any kind in appellant’s truck or at the accident scene when he arrived and he was the first person to come on the scene after the collision. Terry remained at the scene until the ambulance transported appellant to the hospital. To infer that appellant could have had access to alcoholic beverages in Mr. Terry’s truck, in the ambulance en route to the hospital, in the hospital emergency room, or in the x-ray room, would require us to throw common sense to the wild winds. Appellant admitted he consumed six cans of beer prior to the accident. We hold Trooper Olive’s testimony was relevant and admissible; its weight and credibility were for the jury.
Appellant also contends that the prosecutor’s questions to appellant’s brother as to whether or not James or Jim Jackson had been arrested for driving while intoxicated after they left the fish fry constituted reversible error. The record reflects that the witness answered that he did not know. We agree with appellant that the questions posed by the prosecutor were improper and irrelevant to any issue in this case. However, the law is well settled that a negative answer to an improper question does not constitute reversible error. Stephens v. State, 250 Ala. 123, 33 So.2d 245; Leonard v. State, 36 Ala.App. 397, 58 So.2d 138; Hurst v. State, 54 Ala.App. 254, 307 So.2d 62.
Appellant’s next contention is that the trial court erred in overruling his objection and motion to exclude the testimony of Nurse Sue Sullivan on cross-examination on the ground that her answer was not responsive and was prejudicial. On direct examination Mrs. Sullivan stated that appellant was drunk when he arrived at the hospital.
From the record:
“Q. Tell us again, Mrs. Sullivan, what you base your testimony on that Mr. Pride was drunk on this occasion other than you say that you smelled an odor of alcohol when he first got out of the ambulance and that he stepped down a big step from the ambulance and seemed to stagger. What else?
“A. Well, for one thing, I think that most people after they had been in an accident like that and killed someone would at least ask about the other person if they were sober.”
The question asked the witness Sullivan was as broad as a question could possibly be framed and it cannot be gainsaid that the answer was responsive to the question as posed.
In Holifield v. State, Ala.Cr.App., 347 So.2d 559, this court in treating a similar matter said:
“We pretermit considering the prejudicial effect, if any, of the answer. We are merely calling attention (to the fact) that the answer was responsive to the question.”
Appellant asserts that the trial court committed reversible error in refusing to give written charge 37. This charge reads as follows:
“I charge you, ladies and gentlemen of the jury, that if you have a reasonable doubt of the defendant’s guilt growing *1219 out of the evidence or any part of it, you must return a verdict of not guilty.”
Refused charge no. 37 has been held to be a correct charge and the refusal to give such charge is reversible error. Tillman v. State, Ala.Cr.App., 360 So.2d 1074, and cases cited therein.
We have read and reread the court’s oral charge and find that the principle of law contained in refused charge 37 is nowhere to be found in the oral charge. See, King v. State, Ala., 356 So.2d 1220 (1978) and In re Dillard, Ala., 371 So.2d 947 (1979). The refusal to give this charge mandates a new trial.
REVERSED AND REMANDED.
All the Judges concur.